No. 15-1322

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

McELROY COAL COMPANY,

*Petitioner,*

v.

ROGER D. KENNEDY, and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents*

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

**OPENING BRIEF OF PETITIONER,
McELROY COAL COMPANY
PUBLIC REDACTED VERSION**

Jeffrey R. Soukup
Kevin M. McGuire
William S. Mattingly
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY  40507
(859) 255-9500
jrsoukup@jacksonkelly.com
*Counsel for McElroy Coal Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. <u>15-1322</u>        Caption: <u>McElroy Coal Company v. Roger D. Kennedy</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>McElroy Coal Company,</u> who is <u>Petitioner</u>, makes the following
disclosure:

1.    Is party/amicus a publicly held corporation or other publicly held
      entity?
            _____YES    <u>  X  </u>NO

2.    Does party/amicus have any parent corporations?
            <u>  X  </u>YES    _____NO

            In 2013, the company previously known as McElroy Coal
            Company was sold and is now Ohio County Coal Company, a
            wholly owned subsidiary of Murray American Energy, Inc., a
            privately held corporation.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly
      held corporation or other publicly held entity?
            _____YES    <u>  X  </u>NO

4.    Is there any other publicly held corporation or other publicly held
      entity that has a direct financial interest in the outcome of the
      litigation (Local Rule 26.1(b))?
            _____YES    <u>  X  </u>NO

5.    Is party a trade association?
            _____YES    <u>  X  </u>NO

6.    Does this case arise out of a bankruptcy proceeding?
            _____YES    <u>  X  </u>NO

<u>/s/ Jeffrey R. Soukup              </u>        <u>June 5, 2015</u>
*Counsel for McElroy Coal Company*

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ............................................................................... 1

II.   STATEMENT OF THE ISSUES ...................................................... 3

      1.    The agency fact-finder found medical opinions
that distinguish the effects of smoking and coal
mine dust to be *per se* contrary to the preamble.
Is this finding irrational, unsupported by
substantial evidence, and contrary to law? ................. 3

      2.    Did the agency fact-finder fail to consider that Dr.
Zaldivar based his medical conclusions on medical
literature published years after the preamble was
issued? ....................................................................... 3

      3.    Is the finding that Dr. Zaldivar did not consider
whether the disabling impairment is significantly
related to or substantially aggravated by coal mine
dust irrational, unsupported by substantial
evidence, and contrary to law?..................................... 3

      4.    Is the finding that Dr. Crisalli errantly relied on
bronchoreversibility to diagnose no legal
pneumoconiosis irrational, unsupported by
substantial evidence, and contrary to law? ................. 3

      5.    The presumption of total disability due to
pneumoconiosis may be rebutted by proof that
either pneumoconiosis is not present or by ruling
out pneumoconiosis as causing disability. Did the
agency err by summarily concluding the
presumption could not be rebutted under the
disability causation rebuttal method when the
presumed legal pneumoconiosis was not rebutted?...... 3

III.   STATEMENT OF THE CASE .......................................................... 4

    A.   Procedural History .................................................................. 4

    B.   Relevant Facts ......................................................................... 6

IV.   SUMMARY OF ARGUMENT ......................................................... 12

V.    ARGUMENT .................................................................................. 14

    A.   Standard of Review ............................................................... 14

    B.   Discussion of Issues ............................................................. 15

        1.   The agency found medical opinions distinguishing the effects of cigarette smoking and coal mine dust to be *per se* contrary to the preamble.  This finding must be rejected because it renders the rebuttable presumption an irrebuttable rule of law..................... 15

        2.   The failure to consider the fact that Dr. Zaldivar based his medical conclusions on medical studies published years after the preamble was issued requires remand for reconsideration.. ......................... 25

        3.   Substantial evidence does not support the ALJ's finding, as Dr. Zaldivar did consider whether the disabling impairment is significantly related to or substantially aggravated by coal mine dust................ 29

        4.   Dr. Crisalli appropriately relied on bronchoreversibility to diagnose no legal pneumoconiosis.. ....................................................... 33

        5.   The agency erred by summarily concluding the 15-year presumption could not be rebutted under the second rebuttal method, disability causation.. ........... 36

VI.   CONCLUSION ............................................................................... 41

VII.  REQUEST FOR ORAL ARGUMENT. ............................................. 42

VIII.   ADDENDUM OF STATUTES, RULES, AND REGULATIONS.......... 43

IX.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

X.    CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## <u>Cases</u>

*A & E Coal Co. v. Adams,*
  694 F.3d 798 (6th Cir. 2012) ........................................................... 27

*Big Branch Res., Inc. v. Ogle,*
  737 F.3d 1063 (6th Cir. 2013) ....................................................... 38

*Boroski v. Dyncorp Int'l,*
  BRB No. 13-0372 (Ben. Rev. Bd. June 11, 2014) ............................. 1

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
  467 U.S. 837 (1984) ...................................................................... 23

*Connecticut Nat'l Bank v. Germain,*
  503 U.S. 249 (1992) ...................................................................... 22

*Consol. Edison Co. of N.Y. v. NLRB,*
  305 U.S. 197 (1938) ...................................................................... 14

*Consolidation Coal Co. v. Swiger,*
  98 F. App'x 227 (4th Cir. 2004) ................................................ 34, 35

*Corley v. United States,*
  556 U.S. 303 (2009) ...................................................................... 22

*Crockett Collieries v. Barrett,*
  478 F.3d 350 (6th Cir. 2007) .................................................... 33, 34

*Dehue Coal Co. v. Ballard,*
  65 F.3d 1189 (4th Cir. 1995) ........................................................ 14

*F.D.A. v. Brown & Williamson Tobacco Corp.,*
  529 U.S. 120 (2000) ...................................................................... 23

iv

*Grigg v. Director, OWCP,*
   28 F.3d 416 (4th Cir. 1994) ........................................................... 37

*Harman Mining Co. v. Director, OWCP,*
   678 F.3d 305 (4th Cir. 2012) ................................................... 17, 27

*Hibbs v. Winn,*
   542 U.S. 88 (2004) ......................................................................... 22

*Island Creek Coal Co. v. Compton,*
   211 F.3d 203 (4th Cir. 2000) .......................................................... 14

*Island Creek Coal Co. v. Henline,*
   456 F.3d 421 (4th Cir. 2006) ................................................... 16, 24

*J.L. v. Friendship Energy, Inc.,*
   BRB No. 07-0597 BLA (Ben. Rev. Bd. May 28, 2008) ................. 33, 35

*Kopp v. Director, OWCP,*
   877 F.2d 307 (4th Cir. 1989) ........................................................... 4

*Milburn Colliery Co. v. Hicks,*
   138 F.3d 524 (4th Cir. 1998) .............................................. 14, 34, 36

*Mountain Clay, Inc. v. Spivey,*
   172 F. App'x 641 (6th Cir. 2006) ............................................. 33, 34

*S.E.C. v. Chenery Corp.,*
   332 U.S. 194 (1947) ................................................................. 16, 24

*Sterling Smokeless Coal Co. v. Akers,*
   131 F.3d 438 (4th Cir. 1997) ................................................... 14, 34

*Stupak v. Quarto Mining Co.,*
   BRB No. 14-0229 BLA (Ben Rev. Bd. Mar. 27, 2015) ....................... 28

*Toler v. Eastern Associated Coal Co.,*
  43 F.3d 109 (4th Cir. 1995) ........................................................... 37

*Trujillo v. Kaiser Steel Corp.,*
  8 Black Lung Rep. (Juris.) 1-472 (Ben. Rev. Bd. 1986) ..................... 37

*Walker v. Director, OWCP,*
  927 F.2d 181 (4th Cir. 1991) ......................................................... 36

*Westmoreland Coal Co. v. Cochran,*
  718 F.3d 319 (4th Cir. 2013) .................................................... 20, 28

*West Virginia CWP Fund v. Bender,*
  782 F.3d 129 (4th Cir. 2015) .................................................... 20, 21

## **Statutes**

Administrative Procedure Act
  30 U.S.C. § 553............................................................................ 39

Black Lung Benefits Act
  30 U.S.C. § 901(a) ....................................................................... 22
  30 U.S.C. § 923(b) ....................................................................... 29
  30 U.S.C. § 932(a) ......................................................................... 1
  30 U.S.C. § 921(c)(4) ............................................... 6, 23, 37, 38, 39

Longshore and Harbor Workers' Compensation Act
  33 U.S.C. § 921(c) ..................................................................... 1, 2

## **Regulations**

Part 718: Standards for Determining Coal Miner's Total Disability or
Death Due to Pneumoconiosis
  20 C.F.R. § 718.2 ........................................................................... 4
  20 C.F.R. § 718.201(a)(2) .......................................................... 5, 34
  20 C.F.R. § 718.201(b) ............................................................. 5, 20
  20 C.F.R. § 718.305 ............................................................6, 21, 23
  20 C.F.R. § 718.305(d) ................................................................. 21

vi

Part 725:  Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended

    20 C.F.R. § 725.2 ........................................................................ 4

    20 C.F.R. § 725.482(a) ............................................................... 1

Part 802: Rules of Practice and Procedure

    20 C.F.R. § 802.221(b) ............................................................... 1

    20 C.F.R. § 802.407 ................................................................... 1

## **Other Authorities**

    65 Fed. Reg. 79920 (Dec. 20, 2000) ........................................... 15

    65 Fed. Reg. 79923 (Dec. 20, 2000) ........................................... 19

    65 Fed. Reg. 79939 (Dec. 20, 2000) ..................................... 16, 18

    65 Fed. Reg. 79940–43 (Dec. 20, 2000) ..................................... 17

# I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board (the "Board").  This Court has jurisdiction over an appeal from a final order of the Board under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a).  The Board affirmed the August 26, 2013 award of federal black lung benefits to Roger D. Kennedy by United States Department of Labor ("DOL") Administrative Law Judge ("ALJ") Larry S. Merck.  Joint Appendix ("JA") 120.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days.  *See* § 921(c); 20 C.F.R. § 725.482(a).  The Board issued an initial order affirming the award of benefits to Mr. Kennedy on July 29, 2014.  JA 120.  McElroy Coal Company timely filed a motion for *en banc* reconsideration by the Board on August 28, 2014.  *See* 20 C.F.R. § 802.407; *see* 20 C.F.R. § 802.221(b) (motion for reconsideration deemed filed on date of mailing); *see also Boroski v. Dyncorp Int'l*, BRB No. 13-0372 (Ben. Rev. Bd. June 11, 2014) (unpublished) (motion for reconsideration deemed timely filed when mailed on last day of 30-day filing period).  The Board denied McElroy Coal's motion for *en banc* reconsideration in its final order issued on January 28, 2015.  JA 131.

McElroy Coal then timely filed its appeal with this Court on March 27, 2015. JA 134. The injury alleged, within the meaning of § 921(c) of the LHWCA, occurred in West Virginia. This Court has jurisdiction to review the Board's decision.

## II.    STATEMENT OF THE ISSUES

1. **The agency fact-finder found medical opinions that distinguish the effects of smoking and coal mine dust to be *per se* contrary to the preamble. Is this finding irrational, unsupported by substantial evidence, and contrary to law?**

2. **Did the agency fact-finder fail to consider that Dr. Zaldivar based his medical conclusions on medical literature published years after the preamble was issued?**

3. **Is the finding that Dr. Zaldivar did not consider whether the disabling impairment is significantly related to or substantially aggravated by coal mine dust irrational, unsupported by substantial evidence, and contrary to law?**

4. **Is the finding that Dr. Crisalli errantly relied on bronchoreversibility to diagnose no legal pneumoconiosis irrational, unsupported by substantial evidence, and contrary to law?**

5. **The presumption of total disability due to pneumoconiosis may be rebutted by proof that either pneumoconiosis is not present or by ruling out pneumoconiosis as causing disability. Did the agency err by summarily concluding the presumption could not be rebutted under the disability causation rebuttal method when the presumed legal pneumoconiosis was not rebutted?**

## III.    STATEMENT OF THE CASE

## A.    Procedural History

The case concerns Roger D. Kennedy's claim for federal black lung benefits.  Mr. Kennedy filed his first application for benefits on October 31, 2003.[1]  Mr. Kennedy later abandoned that claim.  JA 1.  Mr. Kennedy filed the present application for benefits (a "subsequent claim") on May 22, 2009.  JA 30.  Benefits were awarded on March 29, 2010, and McElroy Coal requested a hearing before the Office of Administrative Law Judges.[2]  JA 66.  By agreement of the parties, the claim was submitted to ALJ Larry S. Merck for a decision based on the agency record without a formal hearing.  JA 78.

ALJ Merck awarded benefits on August 26, 2013.  JA 77.   The ALJ noted the five pulmonary function studies of record all produced non-qualifying results and did not support finding total disability.  JA 89–90.  The ALJ noted there were four resting arterial blood gas studies which all produced non-qualifying results and two arterial blood gas studies during exercise, one of which suggested impairment.  JA 90–91.  Giving the most weight to the more-recent exercise study that produced

---

[1]    As Mr. Kennedy's last coal mine employment occurred in West Virginia, the law of the United States Court of Appeals for the Fourth Circuit applies to his claim.  *See Kopp v. Director, OWCP*, 877 F.2d 307, 308 (4th Cir. 1989).

[2]    Because this claim was filed after January 19, 2001, it is governed by 20 C.F.R. Parts 718 and 725.  *See* 20 C.F.R. §§ 718.2, 725.2.

qualifying values, the ALJ found the arterial blood gas study evidence supported finding total disability. *Id.* Because Drs. Paul Knight, Robert Crisalli, George L. Zaldivar, and Shirley Coniber all opined Mr. Kennedy was disabled from the pulmonary or respiratory standpoint, the ALJ also found the medical opinion evidence supported finding total disability. JA 91–107. The ALJ thus found Mr. Kennedy established total disability by a preponderance of the evidence. JA 107.

From these findings, the ALJ determined Mr. Kennedy was entitled to invocation of the rebuttable presumption of total disability due to pneumoconiosis (the "15-year presumption"). The ALJ found McElroy Coal had disproven the presence of clinical pneumoconiosis. JA 114. The ALJ found Drs. Crisalli and Zaldivar's opinions—that Mr. Kennedy's impairment is wholly due to cigarette smoke and not to coal mine dust—unpersuasive because the opinions allegedly conflicted with premises in the preamble to the 2000 revisions to the federal black lung regulations. With these two opinions discounted, the ALJ concluded McElroy Coal had not disproven the presence of legal pneumoconiosis.[3] JA 114–16.

---

[3]    "'Legal pneumoconiosis' includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). To diagnose legal pneumoconiosis there must be more than a de minimus effect by coal mine dust, as pneumoconiosis "includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b).

The ALJ noted McElroy Coal could also rebut the 15-year presumption by proving Mr. Kennedy's disabling impairment did not arise out of or in connection with coal mine employment. The ALJ summarily ruled that, because McElroy Coal had failed to rebut the 15-year presumption by disproving the presence of pneumoconiosis, it was precluded from rebutting the 15-year presumption by establishing that the disabling impairment is not caused by coal mine dust exposure. Accordingly, the ALJ found the 15-year presumption was not rebutted, and awarded Mr. Kennedy benefits.[4]

McElroy Coal appealed to the Benefits Review Board, which affirmed the ALJ's decision on July 29, 2014. JA 120. The Board upheld the ALJ's determination that the opinions of Drs. Crisalli and Zaldivar are contrary to the preamble to the 2000 amendments to the black lung regulations. McElroy Coal moved for *en banc* reconsideration, which the Board denied on January 28, 2015. McElroy Coal timely filed a petition for review with this Court on March 27, 2015. JA 134.

## B. Relevant Facts

Mr. Kennedy worked as an underground coal miner for about 26

---

[4]    Here, the trigger for reviving the statutory presumption was the Affordable Care Act ("ACA") itself. The ACA revived the statutory presumption at 30 U.S.C. § 921(c)(4). At the time Mr. Kennedy's claim was adjudicated, the implementing regulation at 20 C.F.R. § 718.305 had not yet been revised.

years.  JA 87.  He last worked for McElroy Coal as an electrical mechanic until 2009, when he left the mines because of a second heart attack. JA 80.  The ALJ found Mr. Kennedy's smoking history extensive and substantial.  JA 82.  Some evidence indicated Mr. Kennedy smoked one-half-to-one package of cigarettes per day since age 15, and he continues smoking at the rate of one-half package per day.  JA 81.

██████████████████████████████████

████████████████████████████████████████

█████████  JA 267.  ██████████████████

███████████████████████████  JA 284.  ████████

█████████████████████████████

████████████████████████████████████

JA 270.  ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████████  JA 275.  ████████

████████████████████████████████████

████████████  *Id.*  ████████████████

████████████████████████████████

█████████████████████████████████



JA 276.

JA 276–77 (emphasis added).

*See* JA 150.

*See id.*



*See* JA 160.

JA 211–12.

JA 142.

JA 147.

*Id.*

*See* JA 195.

---

[5]   Dr. Crisalli is well-qualified to offer an opinion in this case.  He is board-certified in internal medicine and pulmonary disease.  He is also a Clinical Associate Professor of Medicine at the West Virginia University School of Medicine and the Chief of the Pulmonary Subsection at the Charleston Area Medical Center.



JA 200.

*See id.*

*See* JA 199.

*Id.*

---

[6]    Dr. Zaldivar is well-qualified to offer an opinion in this case. He is board-certified in internal medicine, pulmonary disease, and sleep disorder medicine. In addition, he is a NIOSH-certified B-reader, fellow of the American College of Chest Physicians, Clinical Professor of Medicine at West Virginia University School of Medicine, Clinical Professor of Medicine at the West Virginia School of Osteopathic Medicine, and past president of the West Virginia Thoracic Society.

██████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ *See* JA 309. ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████ JA 317. ██████████████████

██████████████████████████████████████████████████

████████████ *See id.*; *see also* JA 367–68. ████████████████

██████████████████████████████████████████████████

████████████████████████████ *See* JA 316–17. ████████████

██████████████████████████████████████████████████

████████████████

## IV.    SUMMARY OF ARGUMENT

McElroy Coal Company has been ordered to pay lifetime disability benefits to its former employee, Roger D. Kennedy, based on the agency's determination that he is totally disabled due to coal workers' pneumoconiosis.  All the physicians agree Mr. Kennedy is afflicted with a totally disabling lung disease.  Some physicians attributed disability entirely to cigarette smoking, reasoning that the effects of cigarette smoke and coal mine dust can be differentiated by various means.  The agency fact-finder, an ALJ, deemed such opinions contrary to the regulatory preamble because the preamble opines that the effects of coal mine dust and cigarette smoke are "similar."

The ALJ's reasoning is contrary to law.  It effectively transforms what is supposed to be a rebuttable presumption of disability causation into an irrebuttable rule of law that obstructive impairments are always due in part to coal mine dust.  The agency may rely on the 2000 preamble to the regulatory changes for scientific premises to determine the consistency of medical opinions presented in black lung benefits cases, but it may not misconstrue the preamble's language so as to make it impossible for an operator to rebut the 15-year presumption in the case of a miner with a lung disease arising out of cigarette smoking and not coal mine dust.  The ALJ's reasoning is a patently unreasonable

12

interpretation of the regulatory preamble that fundamentally upends the regulatory framework and undermines Congress's clear intent that operators be able to rebut the presumed pneumoconiosis-induced disability in appropriate cases.

While the preamble may be accepted as the "official" or "orthodox" view of pulmonary science as of its publication in 2000, scientific knowledge about lung diseases and disease causation does not remain static. Just as when Copernicus and Galileo suggested the Earth revolved around the Sun, scientific understanding was transformed. An expert that relies on medical literature more recent than the medical literature that formed the foundation of the preamble should not be mechanically rejected as "contrary" to the preamble's view of science. The decision below improperly discredits one of McElroy Coal's medical experts since he did not limit himself to medical knowledge that preceded the 2000 preamble.

As this agency decision improperly discredits McElroy Coal's expert medical opinions for invalid reasons, the decision should be vacated and remanded so the agency can assess the conflicting evidence and resolve the material issues of fact as the BLBA and the Administrative Procedure Act ("APA") command.

## V.    ARGUMENT

### A.    Standard of Review

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact issued by the ALJ.  *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998). In determining whether substantial evidence supports the ALJ's factual determinations, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the law.  *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207–08 (4th Cir. 2000).

14

**B.    Discussion of Issues**

**1.    The agency found medical opinions distinguishing the effects of cigarette smoking and coal mine dust to be *per se* contrary to the preamble.  This finding must be rejected because it renders the rebuttable presumption an irrebuttable rule of law.**

Both Dr. Crisalli and Dr. Zaldivar concluded that Mr. Kennedy's disabling impairment is wholly due to cigarette smoking and not coal workers' pneumoconiosis.  The ALJ and the Board concluded their opinions must be discredited as each is contrary to the preamble to the 2000 revisions to the federal black lung regulations.  *See* 65 Fed. Reg. 79920 (Dec. 20, 2000).  Such a conclusion is without a sound legal basis and the benefits award should be reversed or vacated.

The ALJ noted "Dr. Crisalli, based on his review of the previously described evidence, opined that Claimant suffers from a pulmonary impairment, which he attributed solely to tobacco induced emphysema secondary to a component of asthma."  JA 114.  From this, the ALJ concluded "Dr. Crisalli's opinion is premised on scientific evidence conflicting with the science credited by the Department of Labor," since the "Department of Labor has determined . . . that coal dust exposure and cigarette smoking cause emphysema through similar mechanisms." *Id.* (citing 65 Fed. Reg. 79943 (Dec. 20, 2000)).  The Board affirmed and

15

even expanded on the ALJ's finding,[7] stating the ALJ found Dr. Crisalli's report "'conflict[ed]' with the scientific literature adopted by the DOL, which acknowledges: that coal mine dust exposure is clearly associated with clinically significant airways obstruction; that the risk is additive with cigarette smoking; and that coal dust-induced emphysema and smoking-induced emphysema occur through similar mechanisms." JA 124.

The ALJ concluded "Dr. Zaldivar's comments that emphysema caused by coal mine dust exposure will manifest itself differently than emphysema caused by smoking are contrary to the position of the Department of Labor." JA 115 (citing 65 Fed. Reg. 79939 (Dec. 20, 2000)). The Board affirmed, stating the ALJ "properly accorded [Dr. Zaldivar's opinion] little weight because it, like the opinion of Dr. Crisalli, conflicted with the position adopted by the DOL, that emphysema caused by coal mine dust exposure and emphysema caused by smoking occur through similar mechanisms." JA 125–26. The Board then again expanded on the ALJ's finding[8] by adding, "A physician's opinion that there is a pattern of impairment characteristic of smoking,

---

[7]    The Board was not permitted add reasoning on appeal to support the ALJ's finding; the ALJ's decision must stand or fall on the reasons he supplied.  *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Island Creek Coal Co. v. Henline*, 456 F.3d 421, 426 (4th Cir. 2006).
[8]    *See supra* note 7.

as opposed to coal mine dust exposure, is contrary to the view of the scientific literature adopted by the DOL in the preamble and the regulations." *Id.* at 7 (citing 65 Fed. Reg. 79940–43 (Dec. 20, 2000); *Harman Mining Co. v. Director, OWCP*, 678 F.3d 305, 316 (4th Cir. 2012)).

By rejecting Dr. Crisalli's and Dr. Zaldivar's opinions for the aforementioned reasons, the ALJ and the Board unreasonably transform a preamble to regulatory changes from (1) a statement of scientific principles linking coal mine dust exposure with obstructive lung diseases, into (2) an irrebuttable presumption that "obstructive respiratory impairments in retired coal miners always arise out of coal mine dust exposure." The agency ALJ and the reviewing Board essentially determined the preamble required rejecting Dr. Crisalli's and Dr. Zaldivar's assessments, that the effects of coal mine dust and tobacco smoke can be differentiated in Mr. Kennedy, and held no one can determine impairment is wholly due to cigarette smoke and not to coal mine dust. These are invalid rulings on several grounds.

The preamble does not take the position that the effects of coal mine dust and smoking are in all cases indistinguishable. There is no regulatory basis to deem all obstructive respiratory impairments in retired coal miners must have arisen out of coal mine dust exposure. Indeed, the United States Court of Appeals for the D.C. Circuit stressed

17

that the definition of legal pneumoconiosis "does not, as appellants suggest, create a presumption that all or even most obstructive disease is caused by exposure to coal dust." *See Nat'l Mining Ass'n v. Dep't of Labor,* 292 F.3d 849 (D.C. Cir. 2002). This is consistent with the preamble's discussion indicating that obstructive disease can arise out of coal mine dust exposure. "The relationships between hypersecretion of mucus (chronic bronchitis) and chronic airflow limitation (emphysema) on the one hand and the environmental factor of coal mining exposure on the other **appear to be similar** to those found for cigarette smoking." 65 Fed. Reg. 79939 (Dec. 20, 2000) (emphasis added). The preamble continues, "These observations support the theory that dust-induced emphysema and smoke-induced emphysema occur through **similar** mechanisms—namely, the excess release of destructive enzymes from dust- (or smoke-) stimulated inflammatory cells in association with a decrease in protective enzymes in the lung." *Id.* at 79943 (emphasis added).

These passages do not suffice for a medical principle that in black lung benefits cases all obstructive lung diseases have arisen, at least in part, out of coal mine dust exposure. Yet, that is the rule this ALJ applied in this case. "Similar" does not mean "indistinguishable." *See, e.g.*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE,

18

4th ed. (2009), *available at* www.thefree dictionary.com/similar (defining "similar" as "related in appearance or nature; alike though not identical"). Saying the relationships between chronic bronchitis/ emphysema and coal mine dust "appear to be similar" to those between these diseases and smoking does not mean such disease-exposure relationships are also indistinguishable. By the same token, the preamble's statement that coal dust-induced emphysema and smoking-induced emphysema occur through "similar mechanisms" does not suggest, much less establish as a regulatory fact, respiratory damage caused by coal dust is identical to and not differentiable from that caused by cigarette smoking. Otherwise, the regulations (*see* 20 C.F.R. § 718.202) and other agency admonitions that COPD must be shown to have arisen out of coal mine dust exposure are rendered meaningless. *See* 65 Fed. Reg. 79923 (Dec. 20, 2000) ("The Department attempts to clarify that not all obstructive lung disease is pneumoconiosis. It remains the claimant's burden of persuasion to demonstrate that his obstructive lung disease arose out of his coal mine employment and therefore falls within the statutory definition of pneumoconiosis.").

The same caution was expressed in 2013:

[W]hile the Preamble recognizes that the mechanisms by which smoke and coal mine dust cause lung destruction are *similar,* it does *not* state that the mechanisms or "the signs and symptoms [are] identical" . . . , or that the causes of an

19

> obstructive pulmonary disease (smoking and/or coal dust
> exposure and/or asthma) cannot be determined or ruled out
> by a qualified physician. If that were the case, no physician
> could ever rule out any degree of coal dust exposure as a
> significant contributing cause of an obstructive pulmonary
> disease, and the Preamble would effectively become an
> irrebuttable presumption that coal dust exposure, if it is
> proven, must be considered to have significantly caused or
> substantially aggravated the pulmonary condition because no
> one could rule it out.

*Westmoreland Coal Co. v. Cochran*, 718 F.3d 319, 326–27 (4th Cir. 2013)

(Traxler, J., dissenting).[9]

The preamble allows for the medical conclusion that the effects of

coal mine dust and smoking can be distinguished and that disabling

impairments can be deemed wholly attributable to cigarette smoke.

Indeed, the contrary proposition is unsupportable, as the agency's

determination would mandate all emphysema be included as legal

pneumoconiosis. Such a strained interpretation ignores that in legal

pneumoconiosis a chronic lung disease must be **significantly related to**

**or substantially aggravated by** dust exposure in coal mine employment.

20 C.F.R. § 718.201(b) (emphasis added).

An employer can rebut the 15-year presumption by proving that a

claimant does not have legal pneumoconiosis. *See West Virginia CWP*

*Fund v. Bender*, 782 F.3d 129, 143 (4th Cir. 2015). This may be done by

---

[9]    Although contained in a dissenting opinion, the majority never took
issue with Judge Traxler's reasoning about the preamble.

20

establishing by a preponderance of the evidence that the chronic lung disease is not significantly related to or substantially aggravated by dust exposure in coal mine employment.  *See id.*[10]  To determine whether a claimant has coal dust-induced lung disease as opposed to cigarette smoke-induced lung disease, the effects of the two exposures must be distinguished.  If the preamble is applied to forbid distinguishing the effects of coal mine dust and tobacco smoke and thus preclude finding that a chronic lung disease is smoking-related rather than significantly related to or substantially aggravated by coal mine dust, legal pneumoconiosis *per se* cannot be disproven.  The 15-year rebuttable presumption is transformed into an irrebuttable presumption.  Such a legal position leads to the absurd result that whenever a benefits claimant is exposed to 15 years of coal mine dust, that exposure alone is

---

[10]    To rebut the 15-year presumption by disproving the presence of legal pneumoconiosis (as opposed to the cause of a claimant's disabling impairment), legal pneumoconiosis need not be "ruled out" as disability causation must:

> We further observe that, in practice, operators will be required to satisfy the rule-out standard **only in a clearly defined class of black lung claims**.  The rule-out standard applies only when (1) a miner has worked for 15 years or more in an underground coal mine, (2) he suffers from a totally disabling respiratory or pulmonary impairment, and (3) the operator cannot satisfy the first method of rebuttal under Section 718.305(d), namely, disproving the presence of pneumoconiosis.

*Bender*, 782 F.3d at 141 (emphasis added).

21

sufficient to preclude a finding that the miner does not have legal pneumoconiosis. The reasoning the agency applies in this case, in other words **makes it impossible for employers to rebut the 15-year presumption**. This is impermissible and itself hostile to the purpose of the BLBA, which is limited to compensating only those disabled by pneumoconiosis. *See* 30 U.S.C. § 901(a).

Such a draconian application of selected portions from the preamble violates fundamental canons of statutory construction, as it renders superfluous that portion of the statute allowing for rebuttal. *See Corley v. United States*, 556 U.S. 303, 314 (2009) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting N. Singer, *Statutes and Statutory Construction* § 46.06 (6th ed. 2000))) ("'[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"). This cannot be the result Congress envisioned when it enacted the 15-year presumption and expressly made that presumption rebuttable. "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Congress would not have explicitly provided means of rebutting a presumption only for the agency

fact-finders to interpret the law in a way that the proffered means of rebuttable are in fact not available.

The 15-year rebuttable presumption cannot be made irrebuttable. A presumption Congress made rebuttable cannot be administratively transformed into an irrebuttable presumption. *See* 30 U.S.C. § 921 (c)(4); 20 C.F.R. § 718.305. "Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law." *F.D.A. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000). Interpreting and applying the 15-year presumption of 30 U.S.C. § 921(c)(4) (as promulgated by DOL in 20 C.F.R. § 718.305) so as to make irrebuttable a presumption that was written and intended to be rebuttable cannot be considered a permissible or reasonable construction under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). The ALJ's and Board's reasoning must be rejected in order for the 15-year rebuttable presumption to function as intended.

The Board also improperly adds support for the ALJ's findings with reasoning the ALJ did not rely on. Although the ALJ only believed Dr. Crisalli's opinion conflicted with the preamble's statement that coal mine dust-induced emphysema and smoking-induced emphysema occur

23

through similar mechanisms, *see* JA 114, the Board added that the ALJ also found Dr. Crisalli's opinion conflicted with the preamble's precepts that coal mine dust is associated with clinically significant airways obstruction and that the risk is additive with cigarette smoking. *See* JA 124. This analysis cannot be added on appeal by a reviewing tribunal to add support for the ALJ's discounting of Dr. Crisalli's opinion; the ALJ's decision must stand or fall on only the reasons the ALJ supplied. *See Chenery*, 332 U.S. at 196; *Henline*, 456 F.3d at 426. Oddly, the Board fails to point out any part of Dr. Crisalli's opinion to support its contention that the opinion conflicts with these additional preamble precepts.

The Board impermissibly supplements the ALJ's analysis of Dr. Zaldivar's opinion with a sweeping assertion that "A physician's opinion that there is a pattern of impairment characteristic of smoking, as opposed to coal mine dust exposure, is contrary to the view of the scientific literature adopted by the DOL in the preamble and the regulations." JA 126. This is improper. First, because the ALJ did not rely on such reasoning, the Board cannot rely on it to uphold the ALJ's decision. *See Chenery*, 332 U.S. at 196; *Henline*, 456 F.3d at 426.

Second, such an assertion is flatly wrong. The preamble does not take the position that the effects of coal mine dust and smoking are

24

completely indistinguishable such that coal mine dust can never be ruled out as a cause of impairment. *See supra*. While the preamble explains the two exposures affect the lungs through "similar mechanisms," it does not purport to absolutely equate the two in terms of their patterns of impairment or other characteristics.

Finally, such a draconian construction of the preamble creates an irrebuttable presumption that dust exposure alone is sufficient to preclude rebuttal of the 15-year presumption, contrary to the BLBA and the regulations, turning a proof-driven regime into an automatic-entitlement program based solely on dust exposure. *See supra*. The Board, which is not a policymaker, attempts to transform the law without having authority to do so.

As the ALJ's discrediting of Dr. Crisalli's and Dr. Zaldivar's opinions for supposed conflicts with the preamble is irrational, unsupported by substantial evidence, and contrary to law, the Court should reverse or vacate.

**2. The failure to consider the fact that Dr. Zaldivar based his medical conclusions on medical studies published years after the preamble was issued requires remand for reconsideration.**

Even if Dr. Zaldivar's discussion is deemed inconsistent with the medical science discussed by the agency in the regulatory preamble, this does not end the inquiry, as Dr. Zaldivar based his conclusions on

25

medical research published years after the preamble was issued. 

*See* JA 315–17.

*See* JA 406–10, 414–15. The 2000 preamble was issued before any of these studies were published, and obviously does not consider these later studies' findings.

There is no dispute that the DOL's view of the state of relevant scientific knowledge, as reflected in the 2000 preamble, may be relied

---

11    Robab Kohansal, et al., *The Natural History of Chronic Airflow Obstruction Revisited: An Analysis of the Framingham Offspring Cohort*, 180 AM. J. RESP. & CRIT. CARE MED. 3 (2009).

12    Roberto DeMarco, et al., *Risk Factors for Chronic Obstructive Pulmonary Disease in the European Cohort of Young Adults*, 183 AM. J. RESP. & CRIT. CARE MED. 891 (2011).

13    Francesca Pulverino, et al., *A Novel Insight Into Adaptive Immunity in Chronic Obstructive Pulmonary Disease: B Cell Activiting Factor Belonging to the Tumor Necrosis Factor Family,* 182 AM. J. RESP. & CRIT. CARE MED. 1011 (2010).

14    John V. Gosselink, *Differential Expression of Tissue Repair Genes in the Pathogenesis of Chronic Obstructive Pulmonary Disease*, 181 AM. J. RESP. & CRIT. CARE MED. 1329 (2010).

15    Wanner, Adam & Elian Mendes, *Airway Endothelial Dysfunction in Asthma and Chronic Obstructive Pulmonary Disease, a Challenge for Future Research*, 182 AM. J. RESP. & CRIT. CARE MED. 1344 (2010).

16    R. Piipari, et al., *Smoking and Asthma in Adults*, 24 EURO. RESP. J. 734 (2004).

17    Susan Chinn, et al., *An Increase in Bronchial Responsiveness Associated with Contuing or Restarting Smoking*, 172 AM. J. RESP. & CRIT. CARE MED. 956 (2005).

upon in appropriate cases. *See A & E Coal Co. v. Adams*, 694 F.3d 798, 802 (6th Cir. 2012); *Harman Mining*, 678 F.3d at 312. But the preamble, which became effective in January 2001, only reflects the state of scientific knowledge before 2000, when it was written. Science marches on; it does not exist in a vacuum. New research can establish that various conclusions and assumptions held in the scientific community are either erroneous or incomplete. Pulmonary research has continued in the 15 years since the DOL announced review of the pre-2000 pulmonary science discussed by the regulatory preamble.

████████████████████████████████████

████████████████████████████████ JA 367. But Dr. Zaldivar also explains that under the facts of this case, coal mine dust did not cause or contribute to Mr. Kennedy's obstructive lung disease. To the extent Dr. Zaldivar's conclusions might be in conflict with individual statements in the preamble, this is only because Dr. Zaldivar relies on ongoing research and more up-to-date scientific information than that available to the DOL when the preamble was issued. ██████████████████████████

██████████████████████████████

████████████████████████████████████

███████████████████████████

27

████████████████████████████████████

████████    JA 316.  Testimony as to scientific innovations that archaize or invalidate the science underlying the preamble must be considered and not just mechanically rejected as contrary to the preamble. *See Cochran*, 718 F.3d at 324; *see also Stupak v. Quarto Mining Co.*, BRB No. 14-0229 BLA, at *5 (Ben Rev. Bd. Mar. 27, 2015) (unpub.) (stating that "employer is correct in suggesting that an expert can challenge the scientific views accepted by the DOL," so long as "that expert establish[es] that developments have occurred subsequent to the promulgation of the 2001 regulations that invalidate the science underlying the preamble").

The medical literature Dr. Zaldivar discusses is relevant to the medical issues in dispute here because it reinforces his conclusion that coal mine dust, based on its unique properties, can be distinguished from cigarette smoke and can be eliminated as a cause of Mr. Kennedy's impairment. ████████████████

████████████████████████
████████████████████████
████████████████████████
████████████████████████

████████████████████████
████████████████████████

28

JA 420–21.

Both the ALJ and the Board omitted an assessment of the validity of the preamble's findings in light of the discussed more-recent literature. Instead, the agency mechanically dismissed this more-recent literature Dr. Zaldivar utilized without analyzing whether that literature undermined the preamble's position (as construed by the ALJ, the Board, and/or the policy of the agency's administrator, the director of the Office of Workers' Compensation Programs) on the similarity between the effects of coal mine dust and cigarette smoke. This violates the BLBA, which commands that all relevant evidence shall be considered in determining entitlement to black lung benefits. *See* 30 U.S.C. § 923(b). This Court should remand for the ALJ, as the agency fact-finder, to consider whether Dr. Zaldivar's opinion, as buttressed by the post-preamble studies he relies upon, is persuasive and credible enough to undermine or invalidate the preamble's contention (as interpreted by the DOL) about the similarity between coal mine dust and cigarette smoke.

> **3.    Substantial evidence does not support the ALJ's finding, as Dr. Zaldivar did consider whether the disabling impairment is significantly related to or substantially aggravated by coal mine dust.**

The ALJ also discounted Dr. Zaldivar's medical opinion on the ground that Dr. Zaldivar failed to consider whether Mr. Kennedy's disabling impairment was significantly related to or substantially aggravated by coal mine dust exposure.  *See* JA 115; JA 126–27.

JA 363 (emphasis added).





JA 363–65.

JA 367–68.

The agency's analysis is inadequate under the APA as it fails to consider or discuss all the relevant evidence on this issue. Because Dr. Zaldivar did consider whether Mr. Kennedy's disabling impairment is significantly related to or substantially aggravated by coal mine dust exposure, the ALJ's and the Board's findings to the contrary are not supported by substantial evidence and should be reversed or vacated.

### 4.    Dr. Crisalli appropriately relied on broncho-reversibility to diagnose no legal pneumoconiosis.

The ALJ discounted Dr. Crisalli's medical opinion for relying in part on the fact that Mr. Kennedy responded to bronchodilator treatment, because "[t]he fact that Claimant may experience some relief from bronchodilators does not address the etiology of the fixed portion of Claimant's impairment that does not benefit from bronchodilator treatment." JA 114–15 (citing *Crockett Collieries v. Barrett*, 478 F.3d 350, 358 (6th Cir. 2007); *Mountain Clay, Inc. v. Spivey*, 172 F. App'x 641 (6th Cir. 2006); *J.L. v. Friendship Energy, Inc.*, BRB No. 07-0597 BLA (Ben. Rev. Bd. May 28, 2008) (unpub.)). The Board affirmed with even

more wide-reaching language: "As neither a miner's improved response to bronchodilator treatment, nor the variability of his respiratory impairment, preclude the existence of a coal mine dust-related impairment, the administrative law judge permissibly accorded little weight to Dr. Crisalli's opinion on this basis." JA 125 (citing 20 C.F.R. § 718.201(a)(2); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 53 (4th Cir. 1998); *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 441 (4th Cir. 1997); *Consolidation Coal Co. v. Swiger*, 98 F. App'x 227, 237 (4th Cir. 2004)).

None of the authority cited supports the proposition that bronchodilator responsiveness is irrelevant to determining whether a claimant has pneumoconiosis. *Barrett*, on which the ALJ relied, only affirmed a finding that a medical expert had not adequately explained why the claimant's bronchodilator responsiveness precluded a diagnosis of legal pneumoconiosis. In Mr. Kennedy's case, the ALJ did not suggest Dr. Crisalli inadequately explained the significance of bronchodilator reversibility; rather, the ALJ suggested Dr. Crisalli was forbidden from relying on bronchodilator reversibility at all, whether explained or not. *Spivey*, which the ALJ cites, and *Hicks* and *Akers*, which the Board cites, do not address bronchodilator reversibility at all. 20 C.F.R. § 718.201(a)(2), which the Board cites, defines the term

34

"pneumoconiosis" but does not limit the medical factors or criteria, such as bronchodilator reversibility, on which physicians may rely to determine whether a claimant has pneumoconiosis. *J.L.*, which the ALJ cites, and *Swiger*, which the Board cites, are inapposite. *Swiger* explained that "although [the claimant's] condition improved when given a bronchodilator, the fact that he experienced a **disabling residual impairment** suggested that a combination of factors was causing his pulmonary condition." *Swiger*, 98 F. App'x at 237 (emphasis added). Mr. Kennedy's pulmonary function studies were not qualifying for disability either before or after bronchodilator administration—i.e., there was no "disabling residual impairment." *J.L.* held, as the ALJ notes, that a physician's prescription of bronchodilators does not justify the inference that the miner's impairment is completely reversible. *J.L.*, BRB No. 07-0597 BLA. In Mr. Kennedy's case, Dr. Crisalli does not infer complete reversibility from a prescription of bronchodilators; he explains that Mr. Kennedy's bronchoreversibility on pulmonary function testing is evidence that Mr. Kennedy does not have legal pneumoconiosis.

The assertion that bronchodilator reversibility cannot be relied on to diagnose no legal pneumoconiosis constitutes an improper intrusion into the medical experts' authority. As explained above, the summary dismissal of the significance of bronchoreversibility lacks legal support as

35

a proper basis for discrediting medical testimony. Since the law does not preclude a physician from considering bronchoreversibility, it is up to the medical expert, not the agency fact-finder, to determine whether bronchoreversibility is a factor of medical significance in a given case. "To hold otherwise would be tantamount to allowing the ALJ to substitute his untrained opinion for that of qualified experts, which is not allowed." *Hicks*, 138 F.3d at 533; *see also Walker v. Director, OWCP*, 927 F.2d 181, 185 (4th Cir. 1991). By errantly substituting its inexpert interpretation of science and medical data for that of Dr. Crisalli, a medical expert, the agency fact-finder crossed the line between permissible fact-finding and medical re-evaluation.

**5. The agency erred by summarily concluding the 15-year presumption could not be rebutted under the second rebuttal method, disability causation.**

The agency also erred by failing to engage in a full analysis of the second method of rebutting the 15-year presumption, showing that disability is not caused by pneumoconiosis or coal mine dust exposure. In determining whether Mr. Kennedy's disability was caused by his past coal mine dust exposure, the ALJ concluded:

> As noted previously, the 15-year presumption may also be rebutted, even if the miner had pneumoconiosis, by showing the miner's total disability did not arise in whole or part out of his pneumoconiosis. Here, however, Employer has failed to show that Claimant's, at least, 26 years of underground coal dust exposure did not significantly cause, contribute, or

36

aggravate his pulmonary impairment. Accordingly, for the reasons discussed, I find that Employer has failed to establish that Claimant's total disability did not arise in whole or part out of his coal mine employment.

JA 117 (internal citations omitted). The Board affirmed:

> We also reject employer's contention that the administrative law judge improperly used his finding of legal pneumoconiosis to preclude employer from rebutting the presumption by showing that claimant's disabling respiratory impairment did not arise out of, or in connection with, coal mine employment. Contrary to employer's contention, the administrative law judge may consider a doctor's finding regarding the presence or absence of legal pneumoconiosis in determining the credibility of his finding on disability causation. *See Toler v. Eastern Associated Coal Co.*, 43 F.3d 109, 19 BLR 2-70 (4th Cir. 1995); *Trujillo v. Kaiser Steel Corp.*, 8 BLR 1-472 (1986); *see also Grigg v. Director, OWCP*, 28 F.3d 416, 419, 18 BLR 2-299, 2-306 (4th Cir. 1994). Additionally, contrary to employer's contention, the administrative law judge rationally found that the same reasons that undercut the credibility of the opinions of Drs. Crisalli and Zaldivar on the issue of legal pneumoconiosis, also undercut their opinions as to whether claimant's disabling respiratory impairment was related to his coal mine employment. *See Toler*, 43 F.3d at 116, 19 BLR at 2-83; *Trujillo*, 8 BLR at 1-473; *see also Grigg*, 28 F.3d at 419, 18 BLR at 2-306. Consequently, the administrative law judge properly found, in light of employer's experts' failure to show that claimant's "at least" twenty-six years of underground coal dust exposure did not significantly cause, contribute to, or aggravate his pulmonary impairment, that employer failed to satisfy its burden of establishing that claimant's disabling respiratory impairment did not arise out of, or in connection with, coal mine employment. *See* Decision and Order at 40-41. Accordingly, we reject employer's contention that the administrative law judge erred in failing to sufficiently address whether claimant's disabling respiratory impairment arose out of, or in connection with, coal mine employment.

JA 128–29.

37

The ALJ and the Board confused the proper inquiry, conflating disease presence with disability causation. Although 30 U.S.C. § 921(c)(4) gives operators at least two methods of rebutting the 15-year presumption—disproving the presence of pneumoconiosis or disproving disability causation—under the agency's analysis, operators are effectively limited to only one of the two statutory rebuttal methods whenever an ALJ finds the operator's evidence insufficient to satisfy § 921(c)(4)'s first rebuttal method (by disproving the existence of legal pneumoconiosis).[18]

---

[18]    *But see Big Branch Res., Inc. v. Ogle,* 737 F.3d 1063 (6th Cir. 2013) (affirming ALJ's summary discrediting of doctors' opinions on disability causation where the employer failed to rebut the disease-presence rebuttal method and the doctors did not diagnose legal pneumoconiosis).

    *Ogle* is not controlling and should not be adopted here. In Ogle, the employer argued the agency erred by discrediting the employer's medical experts on disability-causation because neither expert diagnosed legal pneumoconiosis, where the presumption of legal pneumoconiosis's presence was not rebutted. But the ALJ never *found* legal pneumoconiosis was present; the disease was only legally *presumed*, because the presumption of was not rebutted. The court concluded the presumption of pneumoconiosis's presence became a factual finding when the employer failed to rebut it, because "the ALJ determined that it was at least as likely as not that Ogle suffered from legal pneumoconiosis." *Ogle*, 737 F.3d at 1074.

    Such reasoning is flawed. An ALJ may discredit a physician's opinion as contrary to the ALJ's factual findings. *See Scott v. Mason Coal Co.*, 289 F.3d 263, 269 (4th Cir. 2002). But logically, such discrediting requires that the ALJ's and the physician's findings conflict. If failing to rebut the presumed presence of pneumoconiosis means "it was at least as likely as not that Ogle suffered from legal pneumoconiosis," *Ogle*, 737 F.3d at 1074, then the only "finding" is an equivocal, 50/50 conclusion—the claimant may or may not have legal pneumoconiosis.

There is no indication, and the ALJ and the Board cite none, that either Congress or the DOL meant to absolutely foreclose rebuttal by proving a miner's disability is not due to coal mine dust (the second § 921(c)(4) rebuttal method) whenever the agency fact-finder finds the operator is unable to prove the miner does not have legal pneumoconiosis (the first § 921(c)(4) rebuttal method).  This kind of drastic result overrides the statutory framework, an option available only to Congress, and significantly alters the black lung regulations, an option permissible under the APA only when undertaken by the DOL after appropriate notice and comment.  *See* 5 U.S.C. § 553.

The agency's conclusion that a finding of legal pneumoconiosis necessarily precludes rebutting the 15-year presumption by disproving disability causation irrationally assumes that if the miner has legal pneumoconiosis, any disabling impairment the miner has must also be due at least in part to his dust exposure.  Such an assumption negates the second rebuttal prong of 30 U.S.C. § 921(c)(4) any time legal pneumoconiosis is found, inappropriately limiting McElroy's methods of rebuttal in violation of the APA.

---

There is no preponderance-of-the-evidence conclusion one way or the other and no basis to conclude a physician opined contrary to the ALJ's finding.

The agency summarily concluded McElroy failed to rebut the 15-year presumption under the second rebuttal method.  Such a conclusion fails to explain the reasoning and bases for such a determination.  As a proper rebuttal analysis is paramount to determining whether benefits should be awarded, such a conclusory analysis is improper and denies McElroy due process.  As the ALJ and the Board failed to properly analyze the second method of rebutting the 15-year presumption, the decision should be reversed, or in the alternative, vacated and remanded for additional consideration consistent with the law.

## VI.    CONCLUSION

McElroy Coal Company respectfully requests the Board's decision and order affirming the ALJ's award of benefits be reversed, or in the alternative, vacated and remanded for reconsideration under the BLBA and black lung regulations.


Respectfully submitted,

**McELROY COAL COMPANY,**

By Counsel.


/s/ Jeffrey R. Soukup
Jeffrey R. Soukup
Kentucky Bar No. 92029
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY  40507
(859) 288-2826

## VII.   REQUEST FOR ORAL ARGUMENT

This case presents questions of law important for consideration of claims under the BLBA.  In the case of a miner with a smoking history, successfully rebutting the 15-year presumption requires determining whether the miner has dust-related lung disease or instead only smoking-related lung disease.  But under the agency's reasoning, any attempt to distinguish the effects of coal mine dust and cigarette smoking is forbidden as contrary to the preamble.  Rebuttal of the presumption is thus rendered impossible by the agency's fact-finder, an ALJ, and conflicts with the statute and implementing regulations. McElroy Coal Company respectfully requests this matter be set for oral argument to assist this Court in understanding the full extent of the medical, legal, and factual issues presented by the case.

## VIII.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

**30 U.S.C. § 921:**

(a) Promulgation; payment of benefits

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

(b) Promulgation of standards determining total disability

The Secretary shall by regulation prescribe standards for determining for purposes of subsection (a) of this section whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis. Regulations required by this subsection shall be promulgated and published in the Federal Register at the earliest practicable date after December 30, 1969, and in no event later than the end of the third month following December 1969. Final regulations required for implementation of any amendments to this subchapter shall be promulgated and published in the Federal Register at the earliest practicable date after the date of enactment of such amendments, and in no event later than the end of the fourth month following the month in which such amendments are enacted. Such regulations may be modified or additional regulations promulgated from time to time thereafter.

(c) Presumptions

For purposes of this section--

> **(1)** If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

43

**(2)** If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

**(3)** If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. as the case may be.

**(4)** if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary

44

impairment did not arise out of, or in connection with, employment in a coal mine.

**(5)** In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

(d) Applicability of presumptions

Nothing in subsection (c) of this section shall be deemed to affect the applicability of subsection (a) of this section in the case of a claim where the presumptions provided for therein are inapplicable.

**20 C.F.R. § 718.201 (2014):**

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

(1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

45

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, "pneumoconiosis" is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.

## 20 C.F.R. § 718.305(d) (2013):

(a) Applicability. This section applies to all claims filed after January 1, 2005, and pending on or after March 23, 2010.

(b) Invocation.

(1) The claimant may invoke the presumption by establishing that—

(i) The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

(ii) The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

(iii) The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

(2) The conditions in a mine other than an underground mine will be considered "substantially similar" to those in an underground

46

mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there.

(3) In a claim involving a living miner, a miner's affidavit or testimony, or a spouse's affidavit or testimony, may not be used by itself to establish the existence of a totally disabling respiratory or pulmonary impairment.

(4) In the case of a deceased miner, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition must be considered sufficient to establish total disability due to a respiratory or pulmonary impairment if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination must not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(c) Facts presumed. Once invoked, there will be rebuttable presumption—

(1) In a miner's claim, that the miner is totally disabled due to pneumoconiosis, or was totally disabled due to pneumoconiosis at the time of death; or

(2) In a survivor's claim, that the miner's death was due to pneumoconiosis.

(d) Rebuttal—

(1) Miner's claim. In a claim filed by a miner, the party opposing entitlement may rebut the presumption by—

(i) Establishing both that the miner does not, or did not, have:

(A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

(B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

47

(ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201.

(2) Survivor's claim. In a claim filed by a survivor, the party opposing entitlement may rebut the presumption by—

(i) Establishing both that the miner did not have:

(A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

(B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

(ii) Establishing that no part of the miner's death was caused by pneumoconiosis as defined in § 718.201.

(3) The presumption must not be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

## IX.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.15-1322      Caption:  <u>McElroy Coal Company v. Roger D. Kennedy</u>

1.    This brief complies with the type-volume limitation of Fed. R. App.
P. 32(a)(7)(B) because:

this brief contains **<u>8,847</u>** words, excluding the parts of the
brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App.
P. 32(a)(5) and the type style requirements of Fed. R. App. P.
32(a)(6) because:

this brief has been prepared in a proportionally spaced
typeface using Microsoft Word  2010 Version in Bookman Old
Style 13 point font.


<u>/s/ Jeffrey R. Soukup</u>
*Counsel for McElroy Coal Company*

Dated: June 5, 2015

## X.   CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of Petitioner, McElroy Coal Company,** was served upon the following by electronic delivery, by mailing a copy thereof to each by United States Postal Service, or by other indicated express delivery service, postage prepaid, this **5th** day of June, 2015.

**ELECTRONIC
& REGULAR:**             Patricia S. Connor
U. S. Court of Appeals for the Fourth Circuit
Lewis F. Powell, Jr. United States Courthouse
1100 East Main Street, Suite 501
Richmond, VA  23219-3517

**ELECTRONIC:**          Anne Megan Davis, Esq.
Johnson Jones
36 S. Wabash Ave., Ste. 1310
Chicago, IL  60603
adavis@jjsgd.com

Gary K. Stearman, Esq.
Emily Goldberg-Kraft, Esq.
U. S. Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W., Suite N-2117
Washington, DC  20210
blls-sol@dol.gov

/s/ Jeffrey R. Soukup
*Counsel for McElroy Coal Company*